**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** : | |
| : | **CRIMINAL ACTION** |
| v. : | |
| : | **No. 15-127** |
| **KENNETH DANIELS** : | |

**MEMORANDUM**

Schiller, J.                                                                                                           August 12, 2020

Kenneth Daniels filed a pro se motion for compassionate release. Daniels, who is currently serving a fifteen-year sentence for being a felon in possession of a firearm, suffers from a number of medical conditions that he claims renders him more susceptible to the adverse effects of COVID-19. The Government objects to compassionate release for Daniels. Based on the record, the Court will deny Daniels's request for compassionate release without prejudice.

**I.      FACTUAL BACKGROUND**

   **A.     Daniels's Crime and Sentence**

On August 8, 2016, Daniels pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The indictment also alleged that Daniels was subject to the sentencing enhancement in the Armed Career Criminal Act, 18 U.S.C. § 924(c). Previously, Daniels had been convicted of drug trafficking, aggravated assault, driving under the influence, and firearms charges. Daniels was sentenced to 180 months in prison, to be followed by five years of supervised release. Daniels had prior drug offenses, and he was therefore sentenced as an Armed Career Criminal. He is scheduled to be released on February 16, 2028.

Daniels, who is currently housed at FCI Allenwood Low, suffers from a number of medical issues, including chronic asthma, high blood pressure, and obesity. He asserts that because of these medical conditions, and because he is a Black male, he has a high risk of contracting the virus and

1

suffering severe complications if he contracts the virus. Based on these medical conditions, Daniels submitted a request for compassionate release to the warden of Allenwood Low on April 9, 2020. That request was denied on May 20, 2020.

### B. The Pandemic

The Court will not write at length about the havoc wreaked by COVID-19 in the United States. The virus, coupled with the abysmal response to it throughout much of this country, has led to the death of over 160,000 people (and counting) in the United States. The virus, coupled with the inability to get it under control, has also shattered the economy. To this day, the virus continues unabated through much of the land with no end in sight. Prisons have been hit particularly hard by the pandemic, as prisons present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.")

Without question, prisons are dangerous places that can turn deadly if the virus takes hold within the walls of the facilities. However, the Government points out at the time of filing of the Government's response—July 17, 2020—"there has not been any report of a positive COVID-19 test . . . among the 1,084 inmates held [at Allenwood Low]." The Court accepts the Government's representation on this matter.

## II. DISCUSSION

### A. Compassionate Release Statute

A district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(ii).

Finally, prior to granting a compassionate release, a district court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate deterrence to criminal conduct. *Id*. § 3553(a)(2)(A-B). Additional factors include the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training, medical care, and other treatment. *Id*. § 3553(a)(2)(C-D).

Although Congress has not defined the term "extraordinary and compelling reasons," the Sentencing Commission has enumerated four reasons that qualify as "extraordinary and compelling":

> (A) Medical Condition of the Defendant.—
>   (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   (ii)  The defendant is —
>       (I)   suffering from a serious physical or medical condition,
>       (II)  suffering from a serious functional or cognitive impairment, or
>       (III) experiencing deteriorating physical or mental health because of the aging process,
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>   (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

       (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

As a threshold matter, the Government argues that this Court is bound by "the relevant policy statement of the Commissions." (Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Gov't's Resp.] at 9.) Thus, a district court would lack the authority to independently evaluate and determine extraordinary and compelling reasons warranting release.

This Court rejects the Government's position and will follow the conclusion reached by the majority of courts that have considered the issue. *See, e.g.*, *Rodriguez*, 2020 WL 1627331, at *4-*6 (E.D. Pa. Apr. 1, 2020). This Court wholeheartedly subscribes to the thorough analysis of this issue outlined by Judge Anita Brody in *Rodriguez*. The bottom line is that while the old policy guidelines offer helpful guidance for this Court's determination, this Court retains the discretion to independently assess whether a defendant has presented "extraordinary and compelling reasons" beyond those contained in an outdated policy statement.

    **B.**    **Daniels's Request for Compassionate Release**

Having traversed that brief tangent, the Court will turn to the merits of Daniels's request for compassionate release. The Government makes certain concessions here. First, the Government acknowledges that due to Daniels's comorbidities, he may be less able to protect himself should he become infected. (Gov't's Resp. at 13.) Second, Daniels's obesity "unquestionably meets the test for an 'extraordinary and compelling' reason" under the policy statement because his obesity puts him at risk for a severe outcome if he becomes infected with

COVID-19. (*Id*. at 15.) Nonetheless, the Government contends, compassionate release is not warranted because Daniels's medical conditions are managed in prison and because he continues to present a danger to the community. (*Id*. at 15-16.) Moreover, Daniels has only served a little over five years of a fifteen-year sentence as an Armed Career Criminal. The Government contends that Daniels's chronic asthma and high blood pressure "do not present any impediment to his ability to provide self-care in the institution." (Gov't's Resp. at 12.)

The Court agrees with the Government's position that Daniels's asthma does not constitute an extraordinary and compelling reason for compassionate release. Moderate to severe asthma may present an extraordinary and compelling reason to justify compassionate release. *See United States v. Towel*, Crim. A. No. 17-519, 2020 WL 2992528, at *4 (E.D. Pa. June 4, 2020). However, Daniels's medical records do not warrant compassionate release due to his asthma. Although Daniels uses an inhaler, his asthma appears under control. His medical records indicate normal lung volumes and clear lungs and his Albuterol inhaler prescription specifically instructs him not to use it daily, but only as needed to prevent or relieve an asthma attack. Daniels was seen by a doctor in April of 2020 because he reported having asthma problems and shortness of breath at night. But his medical records offer no evidence of distress or diagnosis of severe asthma. He was placed on a steroid inhaler and there is no indication that his asthma is not well controlled at Allenwood Low. Indeed, his asthma is an issue he has suffered from for years and has been adequately addressed while Daniels has been in prison. Accordingly, this Court concludes that Daniels's asthma does not warrant compassionate release. *See id*. at *5 (concluding that mild asthma coupled with normal lung functioning did not present an extraordinary and compelling reasons for compassionate release); *see also United States v. Slone*, Crim. A. No. 16-400, 2020

WL 3542196, at *6 (E.D. Pa. June 30, 2020) (concluding that prisoner with mild but persistent asthma was not entitled to compassionate release).

The Court also agrees with the Government's position that Daniels's hypertension does not warrant compassionate release. *See, e.g.*, *United States v. Wragg*, Crim. A. No. 15-398, 2020 WL 4015204, at *8 (E.D. Pa. July 16, 2020); *United States v. Falci*, Crim. A. No. 17-228, 2020 WL 3410914, at *4-*5 (D. N.J. June 22, 2020); *United States v. Yanney*, Crim. A. No. 15-298, 2020 WL 3619077, at *(M.D. Pa. July 2, 2020) (concluding that prisoner's hypertension was controlled in prison and thus did not constitute an extraordinary and compelling reason for compassionate release).

Daniels's obesity presents a closer question. The Centers for Disease Control and Prevention notes that obesity increases the risk of severe illness from COVID-19. And some courts have granted compassionate release to defendants, at least in part, on the basis of the obesity of the defendant. *See, e.g.*, *United States v. Delgado*, Crim. A. No. 18-17, 2020 WL 2464685, at *3-*4 (D. Conn. Apr. 30, 2020) (citing cases). Moreover, the Government agrees that Daniels's obesity "unquestionably meets the test for an 'extraordinary and compelling reason' . . . as the condition puts him at risk for a severe outcome were he to contract COVID-19." (Gov't's Resp. at 15.)

But whether Daniels's obesity presents an extraordinary and compelling reason for compassionate release is not determinative here. Even if Daniels presents an extraordinary and compelling reason for compassionate release, this Court would still deny the motion. First, Daniels has merely posited a fear of contracting the virus where he is currently housed. The Government represents to the Court that "there has not been any report of a positive COVID-19 test [at Allenwood Low] throughout this crisis, among the 1,084 inmates held there. In fact, there has not

been a positive case throughout the Allenwood complex, which also includes a medium-security facility and a penitentiary, which collectively house another 1,674 inmates." (Gov't's Resp. at 8.) This lack of viral presence where Daniels is located weighs against compassionate release. *See, e.g.*, *United States v. Buckman*, Crim. A. No. 14-540, 2020 WL 4201509, at *4 (E.D. Pa. July 22, 2020) ("When prisons can keep the number of positive COVID-19 cases low or even at zero . . . the risk of exposure is too speculative to render the circumstances extraordinary and compelling."). A court in the Middle District of Pennsylvania has recently concluded that the lack of COVID-19 cases at Allenwood Low lessens the likelihood that a prisoner will contract the virus at that facility and therefore weighs against granting a compassionate release request. *See Yanney*, 2020 WL 3619077, at *5

Second, courts faced with a compassionate release request may consider the length of the time already served by the defendant. *See United States v. Pawlowski*, App. A. No. 20-2033, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020). Daniels is not set for release until February of 2028. He has not yet served even half of his 180-month sentence. If the Court granted compassionate release at this stage, his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for his offense.

Third, the Court is concerned that Daniels remains a danger to the community. *See Slone*, 2020 WL 3542196, at *8 ("Mr. Slone's release would be inappropriate at this early stage of his sentence because his criminal history suggests he may pose a danger to the community."); *see also United States v. Belle*, Crim. A. No. 18-117, -- F. Supp. 3d --, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) ("Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the

7

community may ultimately outweigh any health concerns and the balance of factors would weigh against release.")

Daniels is an Armed Career Criminal with numerous convictions. The Court notes that Daniels has mostly been a model prisoner at Allenwood Low. Daniels asserts that he has had no incident reports since 2017 and the Government reports that Daniels has incurred no disciplinary violations at Allenwood or at his prior facility. (Apr. 22, 2020 *Pro Se* Letter re: Administrative Remedy; Gov't's Resp. at 2-3.) Nonetheless, the Court agrees with the Government that Daniels's criminal history is "extensive and includes three convictions for drug trafficking, an aggravated assault conviction, an earlier firearm-related conviction, and a DUI conviction." (Gov't's Resp. at 2.) Therefore, the Court lacks confidence that Daniels, after serving less than half of his sentence, no longer presents a danger to the community.

### III. CONCLUSION

The Court concludes that Daniels has not established that he is entitled to compassionate release under the law. However, Daniels has health issues that must be monitored while he serves his sentence. Moreover, the virus in this country's prisons presents a constant and ever-changing challenge that may warrant reconsideration of this decision. Therefore, the Court will deny the motion without prejudice. Daniels may again seek compassionate release if conditions warrant; for example, if his health worsens or if conditions in Allenwood Low deteriorate. An Order consistent with this Memorandum will de docketed separately.