**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 15-127 |
| | : | |
| KENNETH DANIELS | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                          June 18, 2024

      The incarcerated Kenneth Daniels claims stomach pain from a 3.5 cm. cyst in his upper liver and the Bureau of Prisons's negligence or unwillingness to provide medical care warrants his compassionate release from his 180-month sentence as an armed career criminal. Mr. Daniels claims the Bureau of Prisons delayed sending him for a CT-Scan until a year after approval despite his abdominal pain. He claims the Bureau of Prisons stopped giving him his prescribed stomach pain medication without professional judgment. Mr. Daniels also claims he observed blood in his urine on June 21, 2023, but doctors have not treated him since being placed on "call out" to see his physician assistant. We studied his claims and empathize with his ongoing physical struggles as a forty-seven-year old person incarcerated on a 180-month sentence entered by Judge Schiller in 2016. Our study confirms his present medical conditions do not warrant compassionate release from Judge Schiller's 2016 sentence. We deny Mr. Daniels's most recent pro se motion for compassionate release without prejudice should he later be able to show extraordinary and compelling reasons and his release would then be consistent with federal sentencing policy.

### I.    Background

      A state court convicted Kenneth Daniels of drug trafficking, firearm offenses, and aggravated assault before Judge Schiller sentenced him in 2016 to 180 months in prison after

pleading guilty to being a felon in possession of a firearm. Mr. Daniels's earlier state court convictions rendered him an armed career criminal before Judge Schiller.

The Bureau of Prisons now supervises Mr. Daniels at F.C.I. Ashland, Kentucky.[1] Mr. Daniels is forty-seven years old and is scheduled for release in February 2028.[2] Mr. Daniels underwent a gastric bypass in 2013 and a doctor prescribed him Omeprazole for stomach pain at F.C.I. Allenwood in 2019.[3] He claims F.C.I. Ashland officials refuse to provide Omeprazole medication demonstrating a lack of professional judgment.[4] Mr. Daniels also underwent treatment for stomach pain since December 2021.[5] A regional physician approved Mr. Daniels for a routine CT-Scan after an ultrasound revealed "early or mild fatty infiltration of the liver" in September 2022.[6] A provider delivered this CT-Scan in August 2023 almost a year after the initial approval.[7] The CT-Scan revealed a 3.5 cm cyst in Mr. Daniels's liver.[8] Mr. Daniels's provider stated he "will be monitored with a repeat scan in 12 months to check for stability" of the cyst.[9]

Mr. Daniels again returned to medical/sick call in June 2023 after he observed blood in his urine.[10] Tests confirmed the presence of blood in his urine.[11] The provider after the August 2023 CT-Scan stated Mr. Daniels is iron deficient and prescribed medication several times including now to remedy this deficiency.[12] The provider also stated Mr. Daniels has been "refusing to be compliant with the regular monitoring of his weight the Nutritionist ordered."[13]

### Mr. Daniels's earlier compassionate release motions.

Mr. Daniels first moved for compassionate release in July 2020.[14] He argued his medical conditions rendered him more susceptible to the adverse effects of COVID-19.[15] Judge Schiller denied Mr. Daniels's motion for compassionate release.[16] Judge Schiller found even if "[Mr.] [D]aniels present[ed] an extraordinary and compelling reason for compassionate release, this Court would still deny the motion."[17] Judge Schiller stated the mere existence of COVID-19, the length

of Mr. Daniels's sentence, and the concern Mr. Daniels remained a danger to the community all weighed against granting the motion.[18] Judge Schiller denied Mr. Daniels's second motion for compassionate release later in 2020.[19]

Mr. Daniels moved for compassionate release a third time in August 2022.[20] He argued his health, family circumstances, and prison conditions then warranted his release.[21] Judge Schiller denied Mr. Daniels's motion for compassionate release because Mr. Daniels did not present an extraordinary and compelling reason for relief.[22] Judge Schiller considered the nature and number of his convictions and found releasing Mr. Daniels would not align with the seriousness of his offenses, his characteristics, and the need to respect the law.[23]

## II.    Analysis

Mr. Daniels returns asking we release him based on his medical condition.[24] Mr. Daniels argues his medical history requires long term care in which the Bureau of Prisons has either been negligent or unable to provide.[25] He specifically cites his one-year wait for the CT-Scan and F.C.I. Ashland officials' refusal to provide him Omeprazole despite his abdominal pain.[26] He argues if he "was home he would be able to get the right treatment to remove the [3.5 cm abdominal] cyst" before it "becomes a life-threatening issue."[27] Mr. Daniels also cites a lack of treatment with the blood found in his urine.[28] Mr. Daniels appends certificates demonstrating his completion of prison programming to his compassionate release motion.[29] Mr. Daniels also appends a note from FCI Ashland Warden David LeMaster responding to Mr. Daniels's grievance concerning his lack of medical treatment.[30] Warden LeMaster notes FCI Ashland medical officials evaluated Mr. Daniels thirteen times for stomach pain between December 2021 and June 2023.[31] Warden LeMaster reminds Mr. Daniels FCI Ashland medical officials cautioned Mr. Daniels against purchasing "spicy foods and items that may be irritable to your bowel due to your history."[32] Warden LeMaster

notes Mr. Daniels's commissary receipts include spicy foods like "Doritos, hot beef log, chili con queso, and beef jalapeno cheese combo."[33] Mr. Daniels gained twenty-three pounds since his December 2021 medical consult and FCI Ashland approved Mr. Daniels for a consult with a Bureau of Prisons Dietitian.[34]

The United States opposes release.[35] It argues Mr. Daniels's medical records show F.C.I. Ashland officials have given Mr. Daniels adequate care and Mr. Daniels's cyst is "not immediately concerning."[36] The United States also argues Mr. Daniels's stomach pain is not as significant now and he declined to follow his nutritionist's recommendation regarding his diet and weight.[37] We find Mr. Daniels has not shown extraordinary and compelling reasons for release and, even if Mr. Daniels did, Congress's sentencing factors do not weigh in favor of granting his release.

### A.  Mr. Daniels's health conditions are not extraordinary and compelling reasons warranting release under the Sentencing Commission's Medical Note.

Congress allows us to grant compassionate release from a sentence if we find (1) the incarcerated person presents extraordinary and compelling reason warranting release; (2) granting release is consistent with applicable policy statements issued by the Sentencing Commission; and (3) release is supported by Congress's section 3553(a) sentencing factors.[38]

Congress does not define extraordinary and compelling reasons warranting compassionate release.[39] The Sentencing Commission amended its Sentencing Guidelines to define an extraordinary and compelling medical condition warranting release.[40] These conditions exist when (1) "the defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)" such as terminal cancer, or (2) "the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (3) "[t]he defendant is suffering from a medical condition that requires long-term

or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[41]

Mr. Daniels has not shown these conditions.

### 1. Mr. Daniels does not present an advanced illness with an end-of-life trajectory.

Mr. Daniels argues we must grant his release so "that he can obtain professional medical care before the cyst becomes a life-threatening issue."[42] But Mr. Daniels's provider stated he should return in twelve months for an examination of the "stability" of the cyst.[43] Nothing in the provider's report indicates the cyst currently presents an advanced illness with an end-of-life trajectory.[44] Mr. Daniels does not argue his other medical ailments present a terminal illness.[45] Mr. Daniels has not shown he presently suffers an advanced illness with an end-of-life trajectory.

### 2. Mr. Daniels does not present a medical condition which substantially diminishes his ability to provide self-care and which he is not expected to recover.

The Sentencing Commission also defines an "extraordinary and compelling [medical] reason" exists when the defendant's condition substantially diminishes their ability to provide self-care and from which they are not expected to recover.[46] Mr. Daniels argues his stomach pain and cyst, along with his inadequate medical care, constitute extraordinary and compelling reasons warranting his release.[47] But as Judge Jones held in *United States v. Williams*, "if inadequate medical care is an issue," there are "available administrative means to address [those] issues."[48] Judge Sanchez also held in *United States v. Grant* complaints regarding prison conditions are administrative and not a part of compassionate release.[49] Mr. Daniels's concerns with F.C.I. Ashland officials' care do not provide an avenue for compassionate release.

We are also persuaded by decisions from Judge Salas, Judge Christensen, and Judge Schroeder denying compassionate release where the incarcerated person did not meet the

Sentencing Commission's requirements in its Medical Note. The incarcerated person in *China* moved for compassionate release arguing his type two diabetes and his vulnerability to COVID-19 constituted extraordinary and compelling reasons.[50] The incarcerated person did not present evidence showing his conditions' severity diminished his ability to self-care beyond a potential COVID-19 infection.[51] Judge Salas found the incarcerated person did not present an extraordinary and compelling reason because presented no evidence indicating he would not recover from his medical conditions, or they *substantially* diminished his ability to care for himself.[52]

The incarcerated person in *Shuler* moved for compassionate release based on his medical issues.[53] The incarcerated person suffered from minimal change disease resulting in reduced kidney function, risk of blood clots, and high blood pressure.[54] The incarcerated person also suffered from depression, anxiety, major depressive disorder, and PTSD.[55] The incarcerated person presented physician testimony the incarcerated person needed "more comprehensive and closely monitored care than he is receiving" at USP Victorville.[56] Judge Christensen found the Bureau of Prisons provided treatments and medication.[57] Judge Christensen found the incarcerated person did not present an extraordinary and compelling reason for compassionate release as the incarcerated person did not show specific evidence he would receive *superior* care outside of the Bureau of Prisons.[58]

The incarcerated person in *Isom* moved for compassionate release based on his medical issues.[59] The incarcerated person suffered from stage III chronic kidney disease, back pain, and hypertension.[60] The Bureau of Prisons provided medication and treatment for the incarcerated person's conditions and the incarcerated person did not show diminished self-care.[61] Judge Schroeder found the incarcerated person's kidney disease and sharp back pain did not constitute

an extraordinary and compelling reason as the Bureau of Prisons treated the issues and the incarcerated person did not show how they diminished his self-care.[62]

We are presented with similar facts as those considered by Judges Salas, Christensen, and Schroeder. Mr. Daniels has not proven his conditions substantially limit his ability to self-care like the incarcerated person in *China*.[63] Mr. Daniels has similarly not shown he would receive superior care outside of the Bureau of Prisons like the incarcerated person in *Shuler*.[64] Mr. Daniels seeks treatment before the cyst becomes a life-threatening issue but no physician opines Mr. Daniel's cyst will become life-threatening or presently diminish his ability to provide self-care.[65] Mr. Daniels's proffered reasons are more like the incarcerated person in *Isom* who did not present an extraordinary and compelling reason warranting his release despite suffering from kidney disease and sharp back pain.[66]

### 3. Mr. Daniels does not present a medical condition which requires long-term or specialized care he is not being provided and puts him at serious risk of health deterioration.

The Sentencing Commission also defines an extraordinary and compelling reason exists when the "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[67]

We are persuaded by Judge Breyer considering similar facts in *United States v. Wentworth*.[68] The incarcerated person in *Wentworth* suffered from a gallbladder condition.[69] The incarcerated person argued his need for gallbladder surgery constituted an extraordinary and compelling reason warranting his release because the Bureau of Prisons did not provide the specialized care he needed.[70] The United States opposed and noted the incarcerated person refused the gallbladder surgery the Bureau of Prisons scheduled for him.[71] Judge Breyer denied the

incarcerated person compassionate release noting he cancelled the scheduled surgery and otherwise did not allege facts why he could not receive surgery in FCI Sheridan.[72]

We are also guided by Judge Kinkeade's review of distinct facts when finding extraordinary and compelling reasons warranted granting compassionate release.[73] The incarcerated person in *Bravo-Ziranda* suffered from thyroid cancer.[74] The Bureau of Prisons classified the incarcerated person as requiring twenty-four-hour skilled nursing care or nursing assistance.[75] Judge Kinkeade granted the incarcerated person compassionate release finding the Bureau of Prison's classification and recommendation the incarcerated person receive constant medical supervision constituted an extraordinary and compelling reason.[76]

Mr. Daniels's health condition is more like the one Judge Breyer reviewed than the one Judge Kinkeade reviewed. A provider performed the CT-Scan on Mr. Daniels and told him to return in one year for further evaluation.[77] Mr. Daniels did not adhere to the dietary guidelines of a nutritionist.[78] Mr. Daniels refused medical advice from FCI Ashland officials like the incarcerated person in *Wentworth*.[79] Our analysis would differ if Mr. Daniels demonstrated he needed constant medical supervision like the incarcerated person in *United States v. Bravo-Ziranda*.[80] Mr. Daniels's cyst, stomach pain, and urine ailments at this time are not extraordinary and compelling reasons for compassionate release because they do not require regular medical supervision. Mr. Daniels's refusal of medical services at FCI Ashland belie the suggestion he suffers from serious medical conditions warranting his release.

### B.  We decline to reduce the sentence after applying the section 3553(a) factors.

Mr. Daniels he must still show Congress's sentencing factors weigh in favor of early release even if we found he demonstrated his current medical condition substantially diminishes his ability for self-care in prison or serious deterioration in his health. He does not do so.

Our Court of Appeals require we consider Congress's section 3553(a) sentencing factors before granting compassionate release after finding an extraordinary and compelling reason exists.[81]

Mr. Daniels is not due for release until 2028 and his criminal history includes drug trafficking, firearms, and aggravated assault. Our Court of Appeals instructs it is not an abuse of discretion to deny an incarcerated person with armed career criminal status compassionate release by relying on Congress's section 3553(a) factors.[82] For example, we are persuaded by Judge Schwab considering similar facts in denying an incarcerated person classified as an armed career criminal compassionate release by relying on Congress's section 3553(a) factors.[83] The incarcerated person in *Wood* committed three previous "serious drug offenses" before being sentenced in the instant matter.[84] The incarcerated person had been sentenced for, among other crimes, possession with intent to deliver cocaine and heroin and carrying a firearm without a license.[85] Judge Schwab found the incarcerated person did not present an extraordinary and compelling reason warranting his compassionate release.[86] Judge Schwab also found even if the incarcerated person presented extraordinary and compelling reasons warranting release Congress's section 3553(a) factors weighed against granting the incarcerated person's release because of his armed career criminal status.[87]

We are mindful Judge Bennett considered contrasting facts in finding Congress's section 3553(a) factors weighed in favor of granting an incarcerated person with armed career criminal status compassionate release.[88] The grand jury charged the incarcerated person in *Salliey* with being a felon possessing a firearm, possession with intent to distribute heroin, and possessing a firearm in furtherance of a drug trafficking crime.[89] The incarcerated person and the United States stipulated his status as an armed career criminal.[90] The incarcerated person appended exhibits to

his motion including proof he attained his GED while incarcerated, certificates demonstrating his completing prison programming, and character letters commending the incarcerated person's honesty and consistency.[91] Judge Bennett found Congress's section 3553(a) factors weighed in favor of granting compassionate release because of the "[c]ollective[]" evidence of the incarcerated person's completion of prison programming and character letters.[92]

Mr. Daniels does not present evidence requiring we discount his armed career criminal status and find Congress's section 3553(a) factors weigh in favor of his release. We see no reason to today revisit sentencing Judge Schiller's repeated analysis.  Mr. Daniels is an armed career criminal like the incarcerated persons in *Wood* and *Salliey*. But Mr. Daniels does not present the sort of qualitative evidence of character letters like the incarcerated person in *Salliey*.[93] We commend Mr. Daniels for completing coursework during his term of incarceration. But we are unconvinced Congress through its section 3553(a) sentencing factors mandates we consider educational attainment as limiting the danger the incarcerated person poses to the community. We find Congress's section 3553(a) sentencing factors weigh against granting his release because of his previous convictions for violent offenses.

## III.    Conclusion

We deny Kenneth Daniels's fourth motion for compassionate release. He has not shown compelling and extraordinary reasons for release. Congress's sentencing factors also do not weigh in favor of early release. We have no present grounds to alter Judge Schiller's sentence.

---

[1] ECF No. 135 at 1.

[2] *Id.*

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] ECF No. 136 at 1.

[8] *Id.*

[9] ECF No. 139 at 3.

[10] ECF No. 136 at 6.

[11] *Id.*

[12] ECF No. 139 at 3.

[13] *Id.*

[14] ECF No. 98.

[15] *Id.* at 2.

[16] *United States v. Daniels*, No. 15-127, 2020 WL 4674125 (E.D. Pa. Aug. 12, 2020), *aff'd*, No. 22-2726, 2023 WL 3580699 (3d Cir. May 22, 2023).

[17] *Id.* at *3.

[18] *See id.*

[19] ECF No. 113.

[20] ECF No. 118.

[21] *Id.* at 6–15.

[22] ECF No. 124.

[23] ECF No. 124.

[24] ECF Nos. 135, 136. Mr. Daniels also notes our Court of Appeals's decision in *Range v. Attorney General United States of America*, 69 F. 4th 96 (3d Cir. 2023) requires we vacate his armed career

11

criminal status and re-sentence him. ECF No. 135 at 2. Mr. Daniels specifically notes "changes in law" render his guidelines range shorter because of the *Range* decision. *Id.*

The Sentencing Commission prevents us from reducing Mr. Daniels sentence because of a change in law. The Sentencing Commission in section 1B1.13(c) mandates "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). The Sentencing Commission permits incarcerated persons to argue a change in law constitutes an extraordinary and compelling reason if the defendant received an "unusually long sentence" but "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" <u>and</u> the incarcerated person served over ten years of his term of incarceration. *Id.* § 1B1.13(b)(6). Mr. Daniels does not cite nor can we find authority applying our Court of Appeals's decision in *Range* to a compassionate release motion. Mr. Daniels also has only served nine years of his fifteen-year term of incarceration. *See* ECF Nos. 74, 79.

We express no opinion on the question not presented in his compassionate release request: whether we could reduce his 180-month sentence as an armed career criminal based on *Range* involving a conviction for being a felon in possession by a person earlier convicted of federal benefit fraud. Mr. Daniels's earlier convictions before Judge Schiller in 2016 included drug distribution and assault.

[25] ECF No. 135 at 1.

[26] ECF No. 136 at 1.

[27] *Id.* at 1–2.

[28] ECF No. 135 at 11.

[29] *Id.* at 4–9.

[30] *Id.* at 12–13.

[31] *Id.* at 12.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 12–13.

[35] ECF No. 138.

[36] *Id.* at 3.

[37] *Id.* The United States also argues the Sentencing Commission's carve-out for changes in law resulting in an unusually long sentence does not apply to Mr. Daniels as he served eight-and-a-half years of his term of incarceration at the time the United States responded to his request. *Id.* at 4–5. The Sentencing Commission only considers an unusually long sentence resulting from a now-changed law an extraordinary and compelling reason if the incarcerated person served ten years of their term of incarceration. U.S.S.G. § 1B1.13(b)(6). Mr. Daniels cannot argue a change to the laws governing his predicate convictions for his armed career criminal status constitutes an extraordinary and compelling reason until he serves ten years of his fifteen year mandatory sentence.

[38] *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

[39] 28 U.S.C. § 994(t).

[40] U.S.S.G. § 1B1.13(b)(1) provides in relevant part:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is--

(i) suffering from a serious physical or medical condition,
(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

[41] *Id.*

[42] ECF No. 136 at 1–2.

[43] ECF No. 139 at 3.

[44] *See id.*

[45] ECF Nos. 135, 136.

[46] U.S.S.G. § 1B1.13(b)(1)(B).

[47] ECF Nos. 135, 136.

[48] *United States v. Williams*, No. 2:18-00132, 2021 WL 2400860, at *4 (W.D. Wash. June 11, 2021).

[49] *United States v. Grant*, No. 18-34-3, 2022 WL 558347 at *5 (E.D. Pa. Feb. 24, 2022).

[50] *United States v. China*, No. 15-0203, 2024 WL 1715329, at *3 (D.N.J. Apr. 22, 2024).

[51] *Id.*

[52] *Id.*

[53] *United States v. Shuler*, No. 22-12, 2024 WL 836840, at *2 (D. Mont. Feb. 28, 2024).

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *United States v. Isom*, No. 1:03-241, 2024 WL 2846467, at *3 (M.D.N.C. June 5, 2024).

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *China*, 2024 WL 1715329, at *3.

[64] *Shuler*, 2024 WL 836840, at *2.

[65] *See* ECF Nos. 135, 136, 139.

[66] *Isom*, 2024 WL 2846467, at *3.

[67] U.S.S.G. § 1B1.13(b)(1)(C).

[68] *U.S v. Wentworth*, No. 19-388, 2024 WL 1470534, at *3 (N.D. Cal. Apr. 3, 2024).

[69] *Id.*

[70] *Id.*

---

[71] *Id.*

[72] *Id.* at *4.

[73] *United States v. Bravo-Ziranda*, No. 18-415, 2023 WL 4494348 (N.D. Tex. July 10, 2023).

[74] *Id.* at *3.

[75] *Id.* at *4.

[76] *See id.*

[77] ECF No. 139 at 3.

[78] *Id.*

[79] *Wentworth*, 2024 WL 1470534, at *3.

[80] *Bravo-Ziranda*, No. 18-415, 2023 WL 4494348, at *4.

[81] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020).

[82] *United States v. Gonzalez*, 850 F. App'x 821, 822 (3d Cir. 2021).

[83] *United States v. Wood*, No. 16-35, 2022 WL 17465336 (W.D. Pa. Dec. 6, 2022), *appeal dismissed*, No. 23-1093, 2023 WL 4546557 (3d Cir. Mar. 31, 2023).

[84] *Id.* at * 1.

[85] *Id.* at * 9 n.11.

[86] *Id.* at * 4–8.

[87] *Id.* at *9–10.

[88] *United States v. Salliey*, No. 10-298, 2023 WL 1970491 (D. Md. Feb. 13, 2023)

[89] *Id.* at *1.

[90] *Id.*

[91] *Id.* at *4.

[92] *Id.* at *5.

---

[93] ECF No. 135 at 4–9.